```
                UNITED STATES DISTRICT COURT
                         FOR THE
                   DISTRICT OF VERMONT

Nathan Griffin,                   :
        Plaintiff,                :
                                  :
    v.                            :    File No. 1:06-CV-179
                                  :
Marcel Mills, Warden,             :
Captain Woods, Officer            :
Graves, Officer Norfolk,          :
Employees of Corrections          :
Corporation of America,           :
        Defendants.               :
```

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 14, 15, 17, 30 and 31)

Plaintiff Nathan Griffin, a Vermont inmate proceeding *pro se*, brings this action claiming Eighth Amendment and tort violations by the defendants. Specifically, Griffin claims that his jailers allowed him to be assaulted by a fellow inmate. The events in question occurred while Griffin was incarcerated in a privately-owned facility in Tennessee.

Currently pending before the Court are the defendants' motion to dismiss (Paper 14) and Griffin's motions for default and default judgment (Papers 15 and 17). The defendants argue that venue in Vermont is improper, and that Griffin failed to exhaust his administrative remedies. In his requests for an entry of default, Griffin claims that the defendants failed to

file a timely responsive pleading.  For the reasons set forth below, I recommend that Griffin's motions for default and default judgment be DENIED.  I further recommend that the defendants' motion to dismiss be GRANTED in part and DENIED in part, and that this case be TRANSFERRED to the United States District Court for the Western District of Tennessee.

Factual Background

For purposes of the pending motions, the facts alleged in the complaint will be accepted as true. Griffin is an inmate in the custody and control of the Vermont Department of Corrections.  The defendants inform the Court that, "pursuant to a contract between the State of Vermont and Corrections Corporation of America ('CCA'), [Griffin] has been detained in other jurisdictions."  (Paper 14 at 2).  The facts of this case center on events that took place while Griffin was incarcerated at the West Tennessee Detention Facility ("WTDF").

Griffin claims that while he was at the WTDF, he was assaulted by a fellow inmate.  This inmate, identified in the complaint as "I/M Ashley," was

allegedly known by prison personnel to be dangerous. Griffin claims that Ashley initially displayed "abnormal behavior" during daytime hours and psychotic behavior at night.  The nighttime behavior included "hearing female guards allegedly being 'raped' through the unit walls, seeing things and hearing things that were not there, hearing voices, having hallucinations and being extremely paranoid of inmates."  (Paper 6-1 at 5).

Ashley's behavior later escalated into attacks on fellow inmates.  After one such assault, Ashley was placed in segregation.  Once in segregation, Ashley threatened to "assault any and all inmates placed into his segregation cell as soon as they were placed into his room."  Id. at 7.  Griffin claims that due to Ashley's repeated assaults on his cell-mates, CCA employees "were all well aware of this extremely bizarre and violent inmate."  Id.

On March 10, 2006, Griffin was taken to segregation for a disciplinary infraction.  At first, he was placed in a locking shower stall while being "processed."  Id. at 8.  Shortly thereafter, defendants Graves and Norfolk informed Griffin that defendant Woods

3

had ordered him to be placed in a cell with Ashley. When Griffin arrived at Ashley's cell, Ashley alleged warned that "'[if] you put that guy in here with me you'll be calling for officers in the need of assistance and for medical in 5 seconds.'"  Id.  Griffin turned to Graves and Norfolk and asked if he could be placed in a different cell.  The officers then returned Griffin to the segregation shower and called Woods to report Ashley's threat and receive further instructions.

One hour later, Norfolk informed Griffin that, notwithstanding Ashley's threat, Woods had instructed for him to be placed in Ashley's cell.  Griffin protested the placement, and explained to Norfolk and Graves that he was afraid.  Norfolk allegedly advised Griffin "to step back to the rear of the cell and be prepared to fight with I/M Ashley."  Id. at 11.

As soon as both Griffin and Ashley were uncuffed, Ashley began his assault.  He first punched Griffin in the right eye, then threw him "around the cell violently."  Id.  Griffin alleges that Graves and Norfolk watched him being beaten but offered no

assistance.  Eventually, Graves and Norfolk did call for additional officers and medical care.

Griffin allegedly received multiple injuries as a result of Ashley's attack, including: a swollen right eye; facial abrasions and bruises; finger nail scrapes on his face; bruises to his lower back and lower left leg; and lumps on the back of his head.  Griffin also claims that he suffered psychological injuries, including post-traumatic stress disorder.  His final allegation is that defendant Mills, the prison warden, "must have had prior knowledge" of Ashley's conduct yet failed to provide adequate protection.  Id. at 13.

Griffin brings his legal claims under the Eighth Amendment, as well as common law torts of breach of duty to protect, negligence *per se*, and intentional infliction of emotional distress.  For relief, he seeks a declaratory judgment, compensatory damages and punitive damages.

## Discussion

I. Motions for Default Judgment

Griffin has moved the Court to enter a default and default judgment in his favor based upon the defendants'

alleged failure to file a timely response to the complaint.  (Papers 15 and 17).  Because Griffin is proceeding *in forma pauperis*, service in this case was accomplished by the United States Marshals Service via requests for waivers of service.  The docket shows that those waivers were sent on October 19, 2006.  (Papers 8-12).

On January 4, 2007, counsel for the defendants notified the Marshals Service that only one waiver was received, and that this waiver named only "Employees of Corrections Corporation of America" as defendants.  (Paper 22-2 at 1).  On January 5, 2007, counsel received from the Marshals Service four additional waivers identifying each individual defendant by name.  In a letter dated January 10, 2007, counsel informed the Marshals Service of his intention to file a motion to dismiss by February 5, 2007.  On January 29, 2007, the Court ordered the defendants to file an answer within 20 days.

The Court received Griffin's requests for entry of a default and default judgment on February 21, 2007.  At that time, the Court had already extended the

defendants' time for filing a responsive pleading.  The defendants timely filed their motion to dismiss for improper venue on February 5, 2007.  The filing of a motion to dismiss under Rule 12 extends the time for filing an answer.  See Fed. R. Civ. P. 12(a)(4).  Accordingly, the motion to dismiss was timely filed and no other pleading has been required.  I recommend that the motions for entry of a default (Paper 15) and default judgment (Paper 17) be, therefore, DENIED.

II.  Motion to Dismiss Standard

A motion to dismiss should only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."  Weixel v. Board of Educ. of New York, 287 F.3d 138, 145 (2d Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in the nonmovant's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (citing Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)).  When a plaintiff is proceeding *pro se*,

courts must construe the complaint liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997).

III.  Venue

In their motion to dismiss, the defendants initially argued that venue in Vermont is improper. (Paper 14). They have since supplemented their motion to argue that the case should be dismissed, and not simply transferred, because Griffin failed to exhaust the prison grievance procedure. (Paper 19). In response to this latter argument, Griffin contends that he was initially denied access to grievance forms, and was later informed by prison personnel that the denial of his grievance could not be appealed. Both parties have submitted affidavits to support their arguments.

The Court will first address the issue of venue. Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 1404(a) and 1406(a) permit the Court to dismiss a claim where venue is improper. The defendants have filed their motion under 28 U.S.C. § 1406(a), which requires dismissal if venue is improper, or a transfer to the appropriate court if a transfer would serve "the

interests of justice." 28 U.S.C. § 1406(a). The requirement of proper venue "serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred." Leon C. Baker, P.C. v. Bennett, 942 F. Supp. 171, 175 (S.D.N.Y. 1996).

In cases involving questions of federal law, such as Griffin's civil rights claims under § 1983, venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b); see also Amaker v. Haponik, 198 F.R.D. 386, 391 (S.D.N.Y. 2000). Griffin has also alleged that this Court has subject matter jurisdiction by virtue of diversity of citizenship. In that event,

the controlling statute is 28 U.S.C. § 1391(a), which provides that venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Although the complaint does not specifically allege the defendants' addresses, it is undisputed that they each worked at WTDF during the period of time in question. Therefore, the Court will assume that they were residents in the Western District of Tennessee at that time. Given this assumption, §§ 1391(a)(1) and (b)(1) would allow for venue in Tennessee, and not Vermont.

The next subsection of each statute determines venue based upon where "a substantial part of the events or omissions giving rise to the events occurred . . . ." 28 U.S.C. § 1391(a)(2), (b)(2). The Second Circuit has instructed lower courts to "take seriously the adjective 'substantial'" in construing "the venue statute strictly." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353,

356 (2d Cir. 2005). In this case, the principal allegations of misconduct center on events at the correctional facility in Tennessee. Accordingly, venue is most appropriate in that state. See <u>Sadler v. Rowland</u>, 2004 WL 2061127, at *5 (D. Conn. Sept. 13, 2004) (action brought by Connecticut prisoner against prison personnel in Virginia transferred to Virginia). Because this action could have been brought in Tennessee, subsection (3) of both §§ 1391(a) and (b) is inapplicable. <u>See</u> Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp. 2003) (citing <u>F.S. Photo, Inc. v. Picturevision, Inc.</u>, 48 F. Supp. 2d 442, 448 (D. Del. 1999)).

    Having determined that venue is most appropriate in Tennessee, the Court must decide whether the case should be dismissed, or whether the interests of justice call for a transfer. If the Court were to dismiss the case without prejudice, the defendants concede that Griffin's claims would be barred in Tennessee by the applicable statutes of limitations. As one Court recently stated, "[d]ismissal is a severe penalty that will not ordinarily be imposed where, as here, the

11

statute of limitations has run and plaintiff's claim will be essentially extinguished. See Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2d Cir. 2005). There are exceptions though.  Transfer is inappropriate if the case unquestionably lacks merit, see id. at 436 . . . ." Yanousky v. Eldorado Logistices Sys., Inc., 2006 WL 3050871, at *7 (E.D.N.Y. Oct. 20, 2006).  The defendants contend that the case lacks merit due to Griffin's failure to exhaust his administrative remedies.  Griffin contends that he exhausted all remedies made available to him.

With respect to the exhaustion issue, the parties have submitted affidavits with conflicting statements of the facts.  In his verified complaint, Griffin states that after he was assaulted he was placed in segregation.  He allegedly asked multiple WTDF staff members for a grievance form, but was not provided access to such forms until after he returned to general population.  (Paper 6-1 at 4).  After he filed his grievance, Griffin learned from the grievance officer, Sergeant Hawkins, that his grievance had been denied for

12

failure to file it within 7 days of the event.  Id. at 4-5.

In response to Griffin's claims, the defendants have submitted an affidavit from Sgt. Hawkins.  Sgt. Hawkins states that inmates were apprised of the grievance procedure during intake, and that grievance forms were made available to inmates held in segregation.  Moreover, her review of facility records revealed that grievances were submitted by prisoners held in segregation at that time.  She further states that a denied grievance may be appealed to the Warden, and that once the Warden issues his decision, "an inmate's administrative remedies are exhausted."  (Paper 19-2).  It is undisputed that Griffin did not appeal the denial of his grievance.

Griffin has submitted his own affidavit in response to Sgt. Hawkins's alleged "misrepresentations" and "lies."  (Paper 29 at 2).  He first refutes the claim that grievance forms were available while he was in segregation, claiming that he was repeatedly told "'we have no grievances for you.'"  Id. at 18.  Even after his return to general population, Griffin claims

that he had trouble obtaining a grievance form until a fellow inmate "found" one for him.  <u>Id.</u> at 18-19.  After his grievance was denied, Griffin was allegedly

> advised [by Sgt. Hawkins] that the facility Warden would not change the decision she was making because the Warden can not [sic] change my rejected grievance when policies are violated and it would be worthless to appeal her decision because others have and my decision has stuck every time.  I was left confused and felt that I exhausted my remedies and tried to allow them to investigate my complaints and the grievance lady advised this would not go any where [sic] anyway.

<u>Id.</u> at 19.  In his memorandum, Griffin claims that Sgt. Hawkins told him there could be no appeal of her denial, and that "she has final say."  (Paper 29 at 5 n.5).

The defendants, in turn, contest Griffin's affidavit.  The defendants have argued that even if Griffin was not given access to grievance forms in segregation, he waited more than seven days once he was in general population.  An inmate cannot exhaust administrative remedies by "filing an untimely or otherwise procedurally defective administrative grievance or appeal." <u>Woodford v. Ngo</u>, 126 S. Ct. 2378, 2382 (2006).  In his verified complaint, Griffin stated that once in general population, he obtained a grievance

14

form from "the officer's cab outside the living unit." (Paper 6-1 at 4). In his more recent affidavit, however, he states that he had trouble obtaining a grievance form until he eventually received assistance from a fellow inmate. The defendants argue that Griffin's statements are inconsistent, and that he cannot avoid dismissal by repudiating the sworn statement in his verified complaint.

    The defendants also contend that Griffin's explanation of his failure to appeal the denial of his grievance does not create an issue of material fact. Griffin claims that he was informed by Hawkins that an appeal would be futile. The defendants submit that this alleged statement "does not allege an appeal was <u>unavailable</u>; rather, Plaintiff argues it was not worth his effort, since he was unlikely to obtain the relief sought." (Paper 30-2) (emphasis in original).

    As presented by the parties in this case, the issue of exhaustion involves conflicting affidavits and disputed facts. As to the timeliness of his grievance filing, the parties disagree on the factual question of whether WTDF staff refused to provide Griffin with a

15

grievance form.  On the question of his grievance appeal, the defendants challenge both Griffin's affidavit and the materiality of his allegations.  The defendants urge this Court to review the facts presented, accept that lack of exhaustion will be argued in a summary judgment motion, and determine the eventual result in the Sixth Circuit.  The Court should decline to undertake this level of review.

   The Second Circuit recently endorsed the Seventh Circuit's description of the transferring court as having "'a power of limited review of the merits.'" Daniel v. American Bd. of Emergency Med., 428 F.3d 408, 436 (2d Cir. 2005) (quoting Phillips v. Seiter, 173 F.3d 609, 610 (7th Cir. 2005).  As Judge Posner stated in Phillips, "if a peek at the merits reveals that the case is a sure loser in the court that has jurisdiction (in the conventional sense) over it, then the court in which it is initially filed – the court that does not have jurisdiction – should dismiss the case rather than waste the time of another court."  173 F.3d at 611.

   "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice."

16

Daniel, 428 F.3d at 435 (citing Phillips, 173 F.3d at 610).  In this case, a "peek at the merits" shows a series of disputed facts and, possibly, a need to make credibility determinations.  If evidentiary hearings are required, it is in the defendants' interests to have those hearings in Tennessee.  In any event, and viewing the facts in a light most favorable to Griffin, the case does not appear to be a "sure loser" on exhaustion grounds.  Whether a court in the Sixth Circuit, after applying that Circuit's law, will find that Griffin's claim cannot proceed as a matter of law is best left to the able courts of that Circuit.  Accordingly, I recommend that this case be TRANSFERRED to the United States District Court for the Western District of Tennessee.

## Conclusion

For the reasons set forth above, I recommend that Griffin's motions for entry of a default (Paper 15) and default judgment (Paper 17) be DENIED.  The defendants' motion to exceed the page limit for their reply memorandum (Paper 30) is GRANTED.  Further, I recommend that this case be TRANSFERRED to the United States

District Court for the Western District of Tennessee pursuant to 28 U.S.C. § 1406.  Griffin's motion for service of summonses by the United States Marshals Service (Paper 31) is DENIED without prejudice, and may be re-filed in the appropriate venue once the Court has ruled upon this Report and Recommendation.

Dated at Burlington, in the District of Vermont, this 21st day of May, 2007.

>                              /s/ Jerome J. Niedermeier
>                              Jerome J. Niedermeier
>                              United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).